**Dated: July 18, 2016**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 15-14143-JDL |
| J. D. GILL, | ) | Chapter 13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| J. D. GILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV 16-01058-JDL |
| | ) | |
| HSBC BANK USA, N.A., and | ) | |
| WELLS FARGO HOME MORTGAGE | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION TO DISMISS WITH PREJUDICE**

After pursuing loan modification without success, Plaintiff-Debtor J. D. Gill ("Gill") brings this adversary proceeding against Defendants HSBC Bank USA, N.A. and Wells Fargo Home Mortgage ("Defendants"), alleging Defendants acted in bad faith and exercised gross negligence in denying Gill's application for a loan modification under the

Home Affordable Modification Program ("HAMP"). Gill seeks damages, costs and attorney's fees as well as injunctive relief ordering Defendants to re-evaluate Gill's application for a loan modification and enjoining Defendants from filing a motion for relief from the automatic stay or engaging in any other collection activity until such actions "are deemed by the Court to be appropriate".

This matter comes before the Court on Defendants' *Joint Motion to Dismiss Pursuant to Rule 7012(b)* (the "*Motion*") [Doc. 6] and Gill's *Response to Defendants' Joint Motion to Dismiss* (the "*Response*") [Doc. 7]. Defendants' *Motion* asserts that Gill's *Adversary Complaint* [Doc.1] fails to state a claim upon which relief can be granted because HAMP neither creates a private cause of action nor makes Gill a third-party beneficiary so as to assert a claim for breach of contract. Pursuant to Fed. R. Bankr. P. 7052, the Court sets forth the below findings of fact and conclusions of law and dismisses Gill's action with prejudice.

### Jurisdiction

The Court has subject matter jurisdiction under 28 U.S.C. § 157(a) and (c) and the order of reference, Rule 81.4 of the Local Rules for the United States District Court for the Western District of Oklahoma. This is a non-core ("related to") proceeding in that it requires material consideration of non-bankruptcy law. In their *Motion,* Defendants have consented to this Court's entry of a final order in this adversary proceeding.[1]  See *Wellness*

---

[1] Gill failed to state in his *Complaint* whether this was a core or non-core proceeding as is required in adversary proceedings by Fed.R.Bankr. P. 7008 so as to indicate whether this Court had the authority to enter a final order. That pleading deficiency is made moot by the Defendants' consent to entry of a final judgment.

*International Network, Ltd. V. Sharif,* ___U.S.___,135 Sup. Ct. 1932 (2015). In accordance with 28 U.S.C. § 1409, venue in this district is proper.

### **Background - The Home Affordable Modification Program**[2]

In 2009 the Secretary of the Treasury and the Director of the Federal Housing Finance Agency announced the Making Home Affordable Program (the "MHA"), an effort to stem the then-prevailing foreclosure crisis. As part of the MHA, the Home Affordable Modification Program ("HAMP") was created. Under HAMP, borrowers who are struggling to pay their mortgages can apply to the loan servicer for a permanent loan modification to obtain a reduced monthly payment.

After a borrower applies for permanent modification, the loan servicer is required under HAMP regulations to determine, based on financial information submitted by the borrower, whether the borrower is eligible for a loan modification, which would reduce the borrower's monthly loan payment to 31% of his gross monthly income. The servicer then performs a Net Present Value test ("NPV"), which essentially evaluates if it will be financially beneficial for the lender to reduce the monthly payments. If the NPV reveals that the modification is more valuable to the lender than no modification, the servicer must offer a contract to the borrower. If the modification would be less valuable, the loan servicer may take away the HAMP offer, which requires an "on-approval" notice to be sent to the borrower, along with other foreclosure prevention options.

---

[2] The following summary explanation of HAMP is taken from *Dawson v. Litton Loan Servicing*, LP, 2013 WL 1283848 (D. Colo. 2013) (not reported in F.Supp 2d) in which the court took judicial notice of *The Making Home Affordable Program, Department of the Treasury & Housing and Urban Development,* http://makinghome affordable.gov

Before a borrower receives a permanent modification, the loan servicer and the borrower enter into a three-month trial period, during which the borrower makes lower monthly payments toward the mortgage. The terms of the trial period are governed by a form contract entitled "HAMP TPP" (the "TPP").

The TPP states that the borrower will receive a permanent modification agreement if: (1) the borrower's representations of his financial state continue to be true; (2) the borrower complies with the terms of the temporary payment plan; (3) the borrower provides all required documentation; and (4) the lender determines that the borrower qualifies. During this trial period, the borrower makes three monthly payments of the reduced amount. HAMP regulations require that loan servicers pre-qualify borrowers for a permanent modification before even entering the borrowers into a trial period contract.

## **Plaintiff's Claims**

Inasmuch as the Court is presented with a motion to dismiss, the following allegations of Gill's *Complaint* are "facts" which must be taken as true and construed in the light most favorable to Gill:

1. Debtor filed this Chapter 13 bankruptcy on October 28, 2015. On December 28, 2015, Gill applied to Defendants for a modification of the purchase money home loan.[3]

2. On February 26, 2016, Gill received a "denial letter", dated February 5, 2016, from Defendant Wells Fargo denying Gill's application on the "Tier 1" basis that his monthly housing expense was less than or equal to 31% of his monthly income as required by

---

[3] The original mortgagee was Wells Fargo Home Mortgage, Inc.. Defendant Wells Fargo Bank, NA is the successor by merger to Wells Fargo Home Mortgage, Inc. and is the servicer of the Gill's mortgage. Defendant HSBC Bank USA, N.A., is the trustee of the trust that holds Gill's mortgage loan.

HAMP. The letter also advised Gill that he was being denied the alternate option "Tier 2" consideration under which HAMP may be available to borrowers whose proposed monthly payment is less than 31% but more than 25% of net monthly income. The denial letter stated that Defendant calculated Gill's gross monthly income at $17,005. [Complaint, Doc. 1, pgs. 8-10].

3. Gill alleges that Defendant incorrectly utilized the gross monthly income of Gill's closely held corporation by whom he is employed rather than his personal monthly income which he receives from the corporation. Gill asserts that his personal monthly gross income is $4,267.00 of which his housing allowance of $1,461.14 was more than the 31% necessary for HAMP qualification.

4. On March 7, 2016, Gill timely appealed the denial of his loan modification. Over the next approximately two months, Gill and his counsel and Defendant exchanged phone calls concerning Gill's position that Defendant had utilized the wrong gross monthly income figures. Gill also submitted additional financial information requested by Defendant. Gill asserts that Defendant denied his loan modification application based upon an incorrect and inaccurate interpretation of the information which he had supplied. Gill also claims that while Defendant later stated that it had not received all the information which it had requested, Defendant had not advised Gill of such deficiency.

5. On May 4, 2016, Defendant advised Gill by telephone that his appeal had been denied. When Gill's counsel followed this up by a phone call inquiring as to the status of the appeal, he was advised that Defendant was not going to review the additional information which had been submitted for the appeal because Gill's loan was more than thirty-six (36) months past due at the time of the original denial of the modification request.

**<u>Standards for a Motion to Dismiss</u>**

A motion to dismiss for failure to state a claim is governed by Fed R. Civ. P. Rule 12(b)(6), made applicable to adversary proceedings by Rule 7012. In considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts and evaluates those facts in the light most favorable to the plaintiff. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010); *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). "A complaint should not be dismissed unless it appears beyond doubt the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct.1955, 167 L.Ed.2d 929 (2007). Under *Twombly*, in order to survive a motion to dismiss the complaint must contain enough facts to state a cause of action that is "plausible on its face". 550 U.S. at 570. In *Ashcroft v. Iqbal*, 556 U.S. 662, 778, 129 S.Ct.1937, 173 L.Ed.2d 868 (2009), the Supreme Court defined "plausibility" by the following:

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"

*Id*. at 678, citing *Twombly*. See also, *Lamar v. Boyd*, 508 Fed. Appx. 711 (10th Cir. 2013) ("A Plaintiff is not required to set forth a prima facie case for each element, [but] is required to set forth plausible claims"); *Cook v. Baca*, 2013 WL 828814 (10th Cir. 2013).

6

In applying this standard, the Tenth Circuit has directed the trial court to "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215, n.2 (10th Cir. 2007). This is accomplished in a two-step process. First, the Court must identify pleadings that are conclusory and, therefore, not entitled to a presumption of truth. Second, the Court must assume that well-pleaded allegations are true. Examining the factual allegations alone, the Court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed". *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007), *quoting Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## Discussion

Without a doubt, Gill has alleged that Defendants dragged its feet, made little effort to negotiate a loan modification and communicated poorly. But this does not mean that Gill has alleged a plausible claim. His claims fall short of that standard for both factual and legal reasons.

**1. Claim Under HAMP**

Gill's claims are all predicated upon Defendant not properly considering his request for loan modification under HAMP and "effectively denying . . . his right to appeal in violation of HAMP guidelines". It is well settled that HAMP does not create a private right of action. *Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 555 (7th Cir. 2012); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769 (4th Cir. 2013); *Miller v. Chase Home Finance, LLC*, 677 F.3d 1113 (11th Cir. 2012); *Olson v. Merrill Lynch Credit Corp.*, 576 Fed.Appx.

7

506 (6th Cir. 2014); *Wilson v. HSBC Mortgage Services, Inc.*, 744 F.3d 1 (1st Cir. 2014); *Campbell v. Nationstar Mortgage*, 611 Fed.Appx. 288 (6th Cir. 2015).

Gill's *Response* appears to recognize the obvious and concedes that any claim under HAMP should be dismissed: "Plaintiff objects to Defendants' request for dismissal with prejudice as to any claim *other* than Plaintiff's claim of a private federal right of action as a borrower to enforce HAMP's requirements." [*Response*,¶ 4, Doc.7]. Therefore, to the extent that Gill's *Complaint* is predicated on a claim for relief under HAMP, Defendants' *Motion to Dismiss* is granted.

To the extent that Gill's *Complaint* is predicated on any other claim, the Court will attempt to address whether Gill has stated any other conceivably viable claim. Unfortunately for the Court, the *Response* makes no mention of what other claims for relief Gill is asserting other than one under HAMP. Similarly, the *Complaint* does not separately denominate the claims for relief under which Gill is proceeding. In the "Conclusion" of his Complaint, Gill asserts that the "Defendants acted in bad faith and exercised gross negligence in their interaction with Plaintiff . . .". The Court will assume, therefore, that Gill is attempting to plead state law causes of action for bad faith, breach of contract and negligence. As a matter of law, Gill is not entitled to recover upon any of those theories.

### 2. Claim for Breach of Contract

Even though it is clear that a borrower may not directly bring a cause of action under HAMP, the courts are divided as to whether the lack of a private right of action forecloses the availability of an otherwise valid state law cause of action. *Wigod*, 673 F.3d at 581 (There is no general rule that where a state common law theory provides for liability for

conduct that is also violative of federal law, a suit under state law is prohibited so long as the federal law does not provide for private right of action.); *Corvello v. Wells Fargo Bank, N. A.*, 728 F.3d 878 (9th Cir. 2013) (while HAMP authorizes no private right of action, a borrower may sue for breach of contract if the lender violates a term contained within the four corners of an executed TPP); *Young v. Wells Fargo Bank N.A.,* 717 F.3d 224, 234 (1st Cir. 2013) (holding that TPP documents contemplate that, if the borrower complies with its obligations, lender will send the borrower a modification agreement). *But see*, *Pennington v. HSBC Bank USA, N.A.*, 493 Fed.Appx. 548, 556 (5th Cir. 2012) (unpublished) (statements from Bank that borrower would be approved subject to maintaining the requirements of the TPP was not a contract); *Bloch v. Wells Fargo Home Mortgage*, 755 F.3d 886 (11th Cir. 2014) ("a letter stating that borrowers might be eligible for a trial modification under HAMP was not a binding promise that the borrowers would receive a loan modification under HAMP).

Gill has not even attempted to state a state law cause of action for breach of contract. He has not alleged, and the Court has no reason to believe he could ever allege, that he and Defendant ever got beyond the initial application stage and entered into a TPP. Based on the facts as alleged, there was no contract for a loan modification between Gill and Defendants.

As a matter of law, neither could Gill argue (which he hasn't) that he is a third-party beneficiary of a contract between Defendants and a servicer's Service Participation Agreement (SPA) with Fannie Mae or Freddie Mac. While HAMP was enacted in response to a nationwide housing crisis, which might appear to intend to directly benefit

homeowners, HAMP explicitly states that it "shall accrue to the benefit of and be binding upon the parties to the [SPA]". This language shows a clear intention that HAMP was created only for parties to the SPA (such as the Defendants), leaving homeowners as incidental beneficiaries. *Huffman v. Bank of America, N.A.*, 2012 WL 5877512 (S.D. Ohio 2012). Thus,"the vast majority of courts have rejected arguments that a borrower has a direct cause of action under HAMP, the borrower has due process rights under HAMP, or that a borrower can maintain a breach-of-contract action under a third-party beneficiary theory". *Bank of America, N.A. v. Moody*, 2014 OK CIV APP 105, ¶9, 352 P.3d 734; *In re Patrick*, 2014 WL 7338929 (Bankr. N.D. Ohio 2014).

### 3. Claim for Bad Faith

Under Oklahoma law, tort recovery for "bad faith" is one of the two remedies provided for breach of the implied duty to deal fairly and in good faith in the performance of a contract. *First National Bank and Trust of Vinita v. Kissee,* 1993 OK 96, 859 P.2d 502, 509; *Embry v. Innovative Aftermarket Systems L.P,.* 2010 OK 82, 247 P.2d 1158, 1160. "The common law imposes this implied covenant upon all contracting parties, that neither party will act to injure the party's reasonable expectations nor impair the rights or interests of the other to receive benefits flowing from the contractual relationship." Id. In ordinary contracts, a breach of that duty merely results in damages for breach of contract, not independent tort liability. *Wathor v. Mutual Assurance Administrators, Inc*., 2004 OK 2, ¶ 5, 87 P.3d 559.

In the present case, as discussed above, there is no contractual relationship, either direct or third-party beneficiary, between Gill and the Defendants concerning his requested

loan modification to form the basis for either a breach-of-contract claim or the independent tort of "bad faith" based on a contractual relationship. Furthermore, the tort recovery for bad faith depends upon the existence of a "special relationship" under a contract such as the relationship of insurer and insured or bank and depositor. *Christian v. American Home Assurance Co.*, 1977 OK 141, 577 P 2d 899; *Rogers v. Tecumseh Bank*, 1988 OK 36, ¶¶ 14-16, 756 P.2d 1223, 1226. Again, in this case there is neither a contractual relationship, let alone a special relationship between the parties. To the extent that Gill's *Complaint* attempts to do so, as a matter of law, he has not stated a claim for "bad faith".

**4. Claim of Negligence**

Lastly, Gill alleges that Defendants exercised "gross negligence". The threshold question in any action for negligence is the existence of a duty. *Trinity Baptist Church v. Brotherhood Mutual Insurance Service LLC*, 2014 OK 106, 341 P.3d 75; *Wood v. Mercedes - Benz of Oklahoma City*, 2014 OK 68, ¶ 7, 336 P.3d 457; *Miller v. David Grace, Inc.*, 2009 OK 49, ¶ 11, 212 P.3d 1223. The existence of a legal duty is a question of law for the court. *Wood*, 2014 OK 68, ¶ 7, 336 P.3d 457; *Miller*, 2009 OK 49, ¶ 11, 212 P.3d 1223. Where the defendant did not owe a duty of care to the plaintiff, there can be no liability as a matter of law. *Lowery v. Echostar Satellite Corp.*, 2007 OK 38, ¶ 12, 160 P.3d 959; *First National Bank in Durant v. Honey Creek Entertainment Corp.*, 2002 OK 11, ¶ 20, 54 P.3d 100. There is no fiduciary relationship between a mortgagor and mortgagee. *Liberty Nat'l Bank & Trust Co. of Oklahoma City v. Kaibab Industries Inc.,* 1978 OK 162, 591 P.2d 692; *Banker's Trust Co. v. Brown* , 2005 OK CIV APP 1, 107 P.3d 609; *Tara Woods Ltd. Partnership v. Fannie Mae*, 566 Fed.Appx.681 (10th Cir. 2014)(applying

11

Colorado law). In the present case, there was no duty owed by Defendants to Gill upon which to state a claim for negligence, nor was such duty even alleged.

## Conclusion

For the reasons set forth above, it is **ORDERED** that the Defendants' *Joint Motion to Dismiss* [Doc. 6] is **GRANTED**, and because the Court finds that no claim against Defendants could be stated by amendment of Plaintiff's Complaint, the case is **DISMISSED WITH PREJUDICE**.

### #